UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN SCOTT,                               Case No. 12-12864

                    Plaintiff,             David M. Lawson
v.                                         United States District Judge

BANK OF AMERICA and                        Michael Hluchaniuk
BAC HOME LOAN SERVICING                     United States Magistrate Judge

                    Defendants.
_____/

**REPORT AND RECOMMENDATION**
**AMENDED MOTION FOR SUMMARY JUDGMENT (Dkt. 147)**

## I.   PROCEDURAL HISTORY

Defendant, BAC Home Loans Servicing, LP (BANA), incorrectly identified

as "Bank of America" and "BAC Home Loan Servicing" in the complaints, filed

an amended motion for summary judgment on October 14, 2014.  (Dkt. 147).

Plaintiff filed a response on October 28, 2014.  (Dkt. 149).  On November 14,

2014, BANA filed its reply.  (Dkt. 151).  With permission of the Court, plaintiff

filed a sur-reply on December 10, 2014.  (Dkt. 153; *see also* Text Only Order

dated November 25, 2014).  On November 7, 2014, the Court issued a Notice of

Determination Without Oral Argument.  (Dkt. 150).  This matter is now ready for

report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that

1

defendant's motion for summary judgment be **GRANTED** and that plaintiff's complaint be **DISMISSED** with prejudice.

## II.   FACTUAL BACKGROUND[1]

On April 26, 2004, plaintiff borrowed $285,000.00 (the Loan) to purchase real property commonly known as 29343 Fieldstone, Farmington Hills, Michigan 48334 (the "Property").  (Dkt. 147, Ex. A, Note).  As security for the Loan, plaintiff granted BANA a mortgage interest in the Property ("the Mortgage").  (Dkt. 147, Ex. B, Mortgage).  The Mortgage was recorded on June 28, 2004 with the Oakland County Recorder of Deeds, Liber 33421, Page 316.  *Id*.

Plaintiff's Loan originated as a non-escrow loan, and Plaintiff was responsible for paying the Property taxes.  (Dkt. 147, Ex. A, p. 1 at ¶ 3).  Plaintiff's monthly principal and interest payment totaled $2,198.49. (Dkt. 147, Ex. C, Loan Payment History).  In 2010, BANA discovered that plaintiff failed to make several Property tax payments.  (Dkt. 147, Ex. E, Affidavit of Heidi Ulintz, ¶ 7; Dkt. 147, Ex. F, City of Farmington Hills Detailed Tax Information).  Plaintiff failed to make a tax payment directly to the city or county since 2010.  In his deposition, plaintiff testified as follows:

> Q.     Did you – starting in 2010, did you pay directly to

---

[1]  The factual recitation is largely take from BANA's brief in support of motion for summary judgment.  The facts are generally undisputed and where plaintiff disagrees, the Court will so note.

the city or the county real estate taxes?

A.    No.

(Dkt. 147, Ex. D, p. 76, *see also*, pp. 101-105).  Paragraph 9 of the Mortgage

provides in part:

> …If (a) Borrower fails to perform the covenants and
> agreements contained in this Security Instrument…then
> Lender may do and pay for whatever is reasonable or
> appropriate to protect Lender's interest in the Property
> and rights under this Security Instrument…
>
> Any amounts disbursed by Lender under this Section 9
> shall become the additional debt of Borrower secured by
> this Security Instrument.

(Dkt. 147, Ex. B, ¶ 9, p. 8).  Pursuant to Paragraph 9 of the Mortgage, BANA

made a county tax payment in October 2010 in the amount of $1,420.29.  (Dkt.

147, Ex. C, p. 7; *see also* Order Regarding Evidentiary Hearing, Dkt. 82, p. 4).

After discovering that Plaintiff also failed to make his city tax payments,

BANA began to make Property tax payments to the City of Farmington Hills

starting in November 2010:

> • 11/15/2010 $5,000.00
>
> • 11/15/2010 $23.85
>
> • 11/15/2010 $2.00

(Dkt. 147, Ex. C at p. 7; Ex. F; Dkt. 82, p. 4).  Section 3 of the Mortgage states, in

relevant part:

> … If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are required under this Section 3.
>
> Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at any time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

(Dkt. 147, Ex. B at ¶ 3, pp. 4-5).  Pursuant to Section 3 of the Mortgage, BANA made tax payments to protect its interest in the Property and established an escrow account for the taxes.  (Dkt. 147, Ex. B at ¶ 3, pp. 4-5; Ex. C, p. 7; Ex. E at ¶ 7; Dkt. 82, pp. 3-4).  A BANA representative contacted plaintiff via telephone to inform him that it paid the taxes for 2010.  (Dkt. 147, Ex. D, pp. 66).  In his deposition, plaintiff testified as follows:

> A.   The highlighted section that you highlighted, the one thing particularly that I'm looking at is what me and Michael agreed to, and it says the lender may exercise its rights, and Michael and I both agreed that my escrow account would be temporary.

\* \* \*

Q.   How many times did you speak with Michael?

A.   No more than three times, when Michael first
called to tell me that the bank paid my tax for
2010, and he informed me that I had to pay them
back, and I agreed with them, and I talked to him
about that I did not have an escrow account and
did not want one, and he agreed. He said you just
need to pay us back, and you will be fine. And he
called me again after I made my first payment in
December 2010, I sent them my regular house
note, and I send a separate check in the amount of
$1,000 to pay back, to start to pay back the bank.
That's when Michael called me the second time,
and he then informed me at that point that he could
not accept two separate checks. He informed me
that I had to make one check, and they would
separate it, and of course I went through all that
everything is going to be fine, he said yes.  So
after that point I sent just the one check, which
included the extra money to pay back the bank
along with my regular, my regular house payment,
and that was, I think, only twice, I think the two
times that I spoke with Michael.

Q.   And did you receive anything in writing from
Michael or anyone else from Bank of America
describing that arrangement in which you would
pay back the one missed tax payment?

A.   No, that was only with Michael, is the only person
who I spoke with from Bank of America regarding
our agreement.

Q.   So you had nothing in writing from Michael?

A.   Nothing in writing from Michael.

> Q.     Nothing in writing from anyone else at Bank of
>        America?
>
> A.     Well, I didn't speak to anyone else, so no.

(Dkt. 147, Ex. D, p. 66-67).  By letter dated November 15, 2010, BANA informed

plaintiff that it advanced funds to pay the tax-related deficiencies and that an

escrow account had been established.  (Dkt. 147, Ex. G, Letter dated November

15, 2010).  The letter also informed plaintiff that his monthly Mortgage payment

would be increased to fund the escrow account.  *Id*.

In his deposition, plaintiff testified as follows regarding the escrow account:

> Q.     Okay. And so it indicates in this letter, and this is
>        from November of 2010, that there would be an
>        escrow account established. Do you agree with
>        that?
>
> A.     According to this letter, yes.
>
> Q.     And that it would apply to future mortgage
>        payments?
>
> A.     Again according to this letter that came, yes.
>
> Q.     And did in fact the monthly payment increase after
>        this date?
>
> A.     Because they made the mistake.
>
> Q.     What mistake?
>
> A.     Michael and I agreed that my payment would not.
>        I already had an oral agreement with Michael. This
>        was almost like a computer generated that the

> bank sends out to virtually everybody. There was a
> mixup in the bank records, and they sent all this
> information to me that was incorrect.
>
> Q.    But again, you have no record or no writing from
>       Michael indicating some other arrangement.
>
> A.    Michael didn't give me any writing, Michael told
>       me verbally.  We had an oral agreement, and that
>       was backed up by people verifying it and reading
>       Michael's agreement that he had with me.

(Dkt. 147, Ex. D, pp. 80-81).  According to BANA, plaintiff's failure to pay his

Property taxes led to an increased monthly Mortgage payment, but plaintiff did not

make adequate monthly payments to cover the Property tax payments paid by

BANA.  (Dkt. 147, Ex. C at p. 8; Ex. E at ¶ 7; Dkt. 82, p. 4).  According to

plaintiff, his monthly mortgage payment did *not* increase because of his verbal

agreement with Michael.  (Dkt. 147, Ex. D, pp. 80-81).

By the end of November 2010, the Loan had an escrow balance in the

amount of $6,446.62, which included the county Property tax payment made in

October 2010 and the November 2010 Property tax payments to the City of

Farmington Hills.  (Dkt. 147, Ex. C, p. 8).  The amount plaintiff remitted to BANA

in November 2010 was only $2,308.00, which it maintains was not adequate to

cover both the principal and interest payment and the escrow account balance of

$6,446.62.  *Id*.

In December 2010, BANA made another Property tax payment to the City

7

of Farmington Hills in the amount of $1,204.44.  (*Id*.; *see also* Dkt. 147, Ex. F).

Plaintiff's monthly payment to BANA in December 2010 was also only $2,308.00,

which was inadequate to cover both his monthly Mortgage payment and the new

escrow account balance of $7,651.05.  (Dkt. 147, Ex. C, p. 8).  According to

BANA, it applied the insufficient payments in accordance with the terms of the

Mortgage.  Paragraph 1 of the Mortgage, which addresses insufficient payments,

states in part that a "[l]ender may accept any payment or partial payment

insufficient to bring the Loan current, without waiver of any rights hereunder or

prejudice to its rights to refuse such payment or partial payments in the future, but

Lender is not obligated to apply such payments at the time such payments are

accepted."  (Dkt. 147, Ex. B at ¶ 1, p. 4).  Paragraph 2 of the Mortgage, which

addresses the application of payments, states in pertinent part:

> If Lender receives a payment from Borrower for a
> delinquent Periodic Payment which includes a sufficient
> amount to pay any late charge due, the payment may be
> applied to the delinquent payment and the late charge. If
> more than one Periodic Payment is outstanding, Lender
> may apply any payment received from Borrower to the
> repayments of the Periodic Payments if, and to the extent
> that, each payment can be paid in full. To the extent that
> any excess exists after the payment is applied to the full
> payment of one or more Periodic Payments, such excess
> may be applied to any late charges due. Voluntary
> prepayments shall be applied first to any prepayment
> charges and then as described in the Note.

(Dkt. 147, Ex. B at ¶ 3, p. 4).  In accordance with the terms of the Mortgage, the

two monthly Mortgage payments that plaintiff made in January 2011 were applied to satisfy the outstanding amount due for December 2010, but there was still an outstanding escrow balance of $7,651.05.  (*Id.*; *see also* Dkt. 147, Ex. C, p. 8). Plaintiff made payments in February 2011 in the amount of $3,047.16, but BANA says this was not adequate to cover the outstanding balance.  (Dkt. 147, Ex. C, p. 8; *see also* Dkt. 147, Ex. H, Letter from BANA to Plaintiff dated February 17, 2011).  The payments made in February 2011 were applied to satisfy the amount remaining due for December 2010 and January 2011.  (Dkt. 147, Ex. C, p. 8, "PMT/Mo" column).

As the months passed, BANA says that plaintiff became increasingly delinquent in his payments.  (Dkt. 147, Ex. C pp. 8-10; Ex. E at ¶ 8; *see also* Dkt. 147, Ex. I, Letters from BANA to plaintiff regarding outstanding balance due from February 1, 2011 through April 30, 2012).  Defendant made two more Property tax payments prior to plaintiff's reinstatement of the Loan in July 2012:

> • 8/1/2011 $4,695.20

> • 12/12/2011 $1,191.32

(Dkt. 147, Ex. C, pp. 8-9; Ex. F).

Despite numerous letters from BANA regarding the arrearage, plaintiff remained behind in his Mortgage payments and BANA began returning partial monthly payments under the terms of the Mortgage.  (Dkt. 147, Ex. C; Ex. D; Ex.

9

I).  For example, BANA applied plaintiff's payment in March 2012 to the outstanding balance due for December 2011.  (Dkt. 147, Ex. C, p. 9, "PMT/Mo" column).  Paragraph 1 of the Mortgage, which permits BANA to return insufficient payments, states that "[l]ender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current."  (Dkt. 147, Ex. B at ¶ 1, p. 4).  On March 27, 2012, plaintiff was notified by letter that, pursuant to the terms of the Mortgage, his monthly payment in the amount of $2,540.43 was only a partial monthly payment and, as a result, would be returned to him.  (Dkt. 147, Ex. J, Letter dated March 27, 2012; Ex. C at p. 9).  On April 24, 2012, plaintiff was notified that his payment in the amount of $2,308.00 would also be returned, because it was not a full monthly payment.  (Dkt. 147, Ex. K, Letter dated April 24, 2012; Ex. C at p. 10).

BANA initiated foreclosure proceedings when plaintiff was six months behind on his Mortgage payments. The Mortgage provides BANA with the power of sale and the right to foreclose.  (Dkt. 147, Ex. B, p. 3; ¶ 9, p. 8).  Foreclosure proceedings were initiated on the Property in May 2012, because the Loan was in default.  (Dkt. 147, Ex. L, Notice dated May 2, 2012).  According to BANA, due to the mounting arrearage over the years, plaintiff owed a partial payment for December 2011 and full monthly payments for January 2012, February 2012, March 2012, April 2012, and May 2012 at the time foreclosure was initiated.

(Dkt. 147, Ex. C, pp. 9-10, "PMT/Mo" column; Ex. L).  Plaintiff requested a payoff amount, which BANA provided on June 29, 2012.  (Dkt. 147, Ex. M. Reinstatement Calculation dated June 29, 2012).

Plaintiff reinstated his Mortgage by submitting a check in the amount of $20,104.29 dated June 29, 2012 and received by BANA on July 9, 2012.  (Dkt. 147, Ex. C, p. 10).  Thus, the Property was never sold, and plaintiff's Loan remains active.  *Id*.  Defendant issued a refund of $1,773.29 (which represented the foreclosure fees and costs) to plaintiff via check dated August 9, 2012, because it was not a sufficient amount to cover the July 2012 monthly payment amount of $3,102.07.  *Id*. at p. 10.  The reinstatement brought plaintiff's Loan current through June 2012.  (Dkt. 147, Ex. C, p. 10).

According to BANA, plaintiff is currently in default on his Loan.  *Id*.  Until May 2013, BANA says that plaintiff had not made any Mortgage payments since the lawsuit was filed in July 2012.  *Id*.  BANA also maintains that, despite this Court's ruling at the evidentiary hearing in May 2013 that plaintiff's first three monthly payments were to be in the amount of $3,102.97, plaintiff has attempted to make payments in the incorrect amount of $2,888.98 since May 2013.  (Dkt. 82, p. 6; Dkt. 147, Ex. N, Correspondence from Defendant's counsel).  Because each attempted payment was in the incorrect amount, each attempted payment was returned until after the April 2014 payment.  (Dkt. 147, Ex. C, p. 10; Ex. N).

According to BANA, in order to reinstate his Mortgage, as of July 2014, plaintiff owed a total of $71,564.77 to BANA along with late charges in the amount of $491.33 for a total of $72,056.10.  (Dkt. 147, Ex. E at ¶ 16, Ex. 2 to Ex. E).

On June 28, 2012, plaintiff filed this action.  (Dkt. 1).  He filed an Amended Complaint on July 5, 2012.  (Dkt. 6).  BANA correctly points out that the only cause of action that remains at issue is for breach of contract.  (Dkt. 87; Dkt. 109).

## III.    ANALYSIS AND CONCLUSION

### A.    Standard of Review

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Kocak v. Community Health Partners of Ohio*, *Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 251-52 (1986); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005).  The

court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

Under Federal Rule of Civil Procedure 56, a party asserting a fact that cannot be or is not genuinely disputed must support that assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declaration, stipulations, admission, interrogatory answers, or other materials; or a showing that the materials cited do not establish the absence or presence of a genuine dispute or that an adverse party cannot produce admissible evidence to support the fact. Fed.R.Civ.P. 56(c)(1).[2]

## B.   Breach of Contract

In this case, plaintiff takes the position that the alleged oral representation from Michael, a BANA employee, that a permanent escrow account would not be

---

[2] Formerly, "Rule 56(e) require[d] that sworn or certified copies of all papers referred to in an affidavit must be attached to or served with that affidavit ... To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Johnson v. Memphis City Schools*, 2010 WL 1957267, *2 (W.D. Tenn. 2010), quoting, 10A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice & Procedure, § 2722, at 379-80 & 382-84 (1988). According to the Advisory Comments to the recent amendments, this specific requirement was omitted as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record. Comments, 2010 Amendments to Fed.R.Civ.P. 56, subdivision (c). Notably, the language changes have not changed the standard itself. *Id*. ("The standard for granting summary judgment remains unchanged.").

13

created, constituted an enforceable modification to the parties' agreement. (Dkt.

147, Ex. D, pp. 66-67; pp. 80-81). To the extent this assertion forms the basis for

his claim, the undersigned agrees with BANA that it is barred by Michigan's

Statute of Frauds for financial institutions, Mich. Comp. Laws § 566.132(2),

which provides that:

> An action shall not be brought against a financial
> institution to enforce any of the following promises or
> commitments of the financial institution unless the
> promise or commitment is in writing and signed with an
> authorized signature by the financial institution:
>
> (a) A promise or commitment to lend money, grant or
> extend credit, or make any other financial
> accommodation.
>
> (b) A promise or commitment to renew, extend, modify,
> or permit a delay in repayment or performance of a loan,
> extension of credit, or other financial accommodation.
>
> (c) A promise or commitment to waive a provision of a
> loan, extension of credit, or other financial
> accommodation.

Mich. Comp. Laws § 566.132(2). "[C]ourts in this District have repeatedly

held that misrepresentation claims based on alleged promises to modify home

mortgages are barred by the Michigan Statute of Frauds." *Loeffler v. BAC Home*

*Loans Servicing*, *L.P.*, 2012 WL 666750, at *5 (E.D. Mich. 2012) (holding that

plaintiff's fraud and misrepresentation claims were barred by the Michigan Statute

of Frauds); *see also Doering v. JP Morgan Chase Bank, N.A.*, 2015 WL 3403933,

14

at *2 (E.D. Mich. 2015) ("As to the claimed breach of contract, any oral promises that are not incorporated into the mortgage contract with a financial institution-and these were not-are barred by the statute of frauds."). In *Herzoff v. CitiMortgage, Inc.*, 2013 WL 3797482, at *3 (E.D. Mich. 2013), the borrowers brought a fraudulent misrepresentation claim and promissory estoppel claim against the lender based on alleged oral promises to modify their loan. *Id.* In interpreting Mich. Comp. Laws § 566.132(2), this Court determined that the statute precludes a party "from bringing a claim – 'no matter its label'– to enforce a financial institution's alleged promise that it is not supported by a written document signed by an authorized representative of the institution." *Id.*; *see also Crown Tech. Parl v. D & N Bank, FSB*, 242 Mich. App. 538, 550; 619 N.W.2d 66 (2000).

Similarly, in this case, plaintiff relies an alleged oral representation to support his breach of contract claim that only a temporary escrow account would be created. (Dkt. 147, Ex. D, pp. 66-67, pp. 80-81). However, plaintiff admits that no written document exists to support his allegation, which is fatal to his claim. *Id.* And, plaintiff was informed in November 2010 in writing that a forced escrow account would be created. (Dkt. 147, Ex. G). Michigan's "statute of frauds specifically includes promises to 'modify … performance of a loan…'." *Loeffler*, at *5. Thus, the undersigned agrees with BANA that any oral representations in connection with the escrow account are "explicitly barred by

15

Michigan's Statute of Frauds …".  *Id*.  Here, there is no genuine issue of material fact that plaintiff was informed about the creation of the forced escrow account and resulting increase in his monthly Mortgage payment in writing.  (Dkt. 147, Ex. G).  For these reasons, the undersigned concludes that plaintiff's breach of contract claim, to the extent it is based on the alleged oral contract modification is barred by the Michigan Statute of Frauds.

To the extent that plaintiff claims a breach of contract as to parties' written agreement, the undersigned concludes that such claim has no merit.  "A party claiming breach of contract must establish by a preponderance of the evidence (1) that there was a contract, (2) that the other party breached the contract and, (3) that the party asserting breach of contract suffered damages as a result of the breach." *Pientack v. JPMorgan Chase Bank*, *N.A.*, 2013 WL 5372880, at *6 (E.D. Mich. 2013), quoting *Miller-Davis Co. v. Ahrens Const.*, *Inc.*, 296 Mich. App. 56; 817 N.W.2d 609 (2012); *see also Ordway v. Bank of Am., N.A.*, 2013 WL 6163936, at *2 (E.D. Mich. 2013).  According to BANA, summary judgment is proper because plaintiff's claim does not meet two of three requisite elements of a breach of contract claim.  The undersigned agrees.

In the view of the undersigned, there is no evidence that BANA breached the Mortgage contract.  Rather, BANA complied with express its terms by making Property tax payments on behalf of plaintiff when he failed to do so.  (Dkt. 147,

16

Ex. B at ¶ 9, p. 8).  In addition, the terms of the Mortgage permitted BANA to create a forced escrow account for the Property tax payments.  (*Id*. at ¶ 3, pp. 4-5). After BANA began paying the Property taxes, plaintiff did not sufficiently increase his monthly Mortgage payments enough to cover the outstanding escrow balance, and plaintiff became increasingly delinquent on his Loan.  (Dkt. 147, Ex. C, pp. 7-10; Ex. E at ¶ 7).  In accordance with Paragraph 2 of the Mortgage, which addresses the application of payments, BANA applied any payments made by plaintiff to cover the increasing arrearage from previous months.  (Dkt. 147, Ex. B at ¶ 3, pp. 4-5; Ex. C, pp. 7-10).

In the Amended Complaint, plaintiff alleges that he made six payments that are not accounted for in the Loan Payment History; that is, plaintiff claims these checks were cashed, but not credited to his account.  (Dkt. 6, at ¶¶ 14-15).[3] According to BANA, these payments are accounted for in the Loan Payment History.  Specifically, plaintiff claims that a payment in the amount of $6,039.01 was made on November 25, 2011, but that there is no record of it in BANA's Loan Payment History.  (*Id*. at ¶14 (A)).  BANA maintains that this payment is clearly reflected in the Loan Payment History but is broken down into two entries.  (Dkt.

---

[3]  In his response, plaintiff attempts to create additional claims by disputing whether other payments are properly reflected in BANA's records.  The undersigned is not inclined to expand the scope of plaintiff's breach of contract claim beyond that set forth in the Amended Complaint at this late stage of the proceedings, particularly given plaintiff's repeated subsequent failed attempts to amend the complaint and the lack of any evidence that all payments were not properly accounted for by BANA.  (Dkt. 84, 108, 162).

17

147, Ex. C, p. 9).  The Loan Payment History shows one posted payment in the amount of $2,936.94 on November 28, 2011 and another posted payment in the amount of $3,102.07 on November 28, 2011, and together, they total $6,039.01. (*Id.*)  According to BANA's initial brief, this payment was applied to the amount plaintiff owed for October 2011.  (*Id.* at "PMT/Mo" column).  In his sur-reply, plaintiff contends that BANA presents conflicting information regarding the November 2011 payments.  In the reply, BANA presents an affidavit stating that of the $6,309.01 payment, BANA retained $3,102.07 for the payment month of October 2011 but returned $2,936.94 to plaintiff on December 29, 2011.  (Dkt. 151-2).  According to plaintiff, the latter statement is inconsistent with BANA's initial brief in which is claims that the total payment of $6,039.01 posted to plaintiff's account.  A review of the exhibit relied on by BANA in support of both briefs shows that, in fact two payments (one in the amount of $2,936.94 and one in the amount of $3,102.07) were posted on November 28, 2011.  (Dkt. 152-1, Pg ID 2082).  This same document also reveals a refund payment posted on December 23, 2011 in the amount of $2,936.94, as confirmed by the check from BANA to plaintiff in that same amount dated December 29, 2011, attached to BANA's reply. (*See id.* and Dkt. 151-2, Pg ID 2092).  Plaintiff does not deny receiving or cashing this payment from BANA.  Thus, plaintiff's November 25, 2011 payment in the amount of $6,039.01 is fully accounted for in BANA's records.

Plaintiff also claims that a check in the amount of $8,744.60 was accepted by BANA on February 27, 2012 but not credited.  (Dkt. 6, ¶ 14(B)).  According to BANA, the evidence confirms that this payment was indeed credited in the Loan Payment History, and it was broken down into three payments on February 28, 2012 in the amounts of $2,540.42, $3,102.07 and $3,102.07, which totals $8,744.56.  (Dkt. 147, Ex. C, p. 9).  Even though plaintiff alleges that his February 2012 check was in the amount of $8,744.60, BANA points out that the actual amount of the check was $8,744.56.  (Dkt. 6, at ¶14(B) and Dkt. 6, Ex. B).  According to BANA, it applied to the amount plaintiff owed for November 2011 and December 2011.  (Dkt. 147, Ex. C, p. 9, "PMT/Mo" column).  The undersigned finds no basis in plaintiff's submissions to create any issue of material fact suggesting that BANA's records do not fully account for the payment of $8,744.56.

Plaintiff also claims that a check in the amount of $2,308.00 was accepted and cashed by BANA on March 26, 2012 but not credited.  (Dkt. 6, ¶ 14(C)).  BANA says this payment is reflected in the Loan Payment History on March 27, 2012 as a single posting.  (Dkt. 147, Ex. C, p. 9).  This payment was applied to the amount plaintiff owed for December 2011.  (*Id*. at "PMT/Mo" column).  The undersigned finds no basis in plaintiff's submissions to create any issue of material fact suggesting that BANA's records do not fully account for the payment

19

of $2,308.00 by plaintiff.

As set forth in the factual background section above, the Mortgage provides that BANA is not obligated to accept a payment if the payment is insufficient to make the Loan current.  (Dkt. 147, Ex. B at ¶ 1, p. 4).  After plaintiff was several months behind in his monthly payments, BANA says it then exercised its right under Paragraph 1 of the Mortgage to return two partial monthly payments made by Plaintiff.  (Dkt. 147, Ex. B at ¶ 1, p. 4; Ex. C, pp. 9-10).  BANA then exercised its right to foreclose pursuant to the terms of the Mortgage.  (Dkt. 147, Ex. B, p. 3; ¶ 9, p. 8).  BANA maintains that, at the time foreclosure was initiated, plaintiff's Loan was delinquent.  (Dkt. 147, Ex. C, p. 10, "PMT/Mo" column; Ex. L).  As the Loan Payment History shows, plaintiff owed a partial payment for December 2011 and full monthly payments for January 2012, February 2012, March 2012, April 2012, and May 2012.  *Id*.  In the view of the undersigned, plaintiff fails to show any dispute of material fact in this regard, given that the alleged oral modification of the Mortgage is invalid and unenforceable.  While plaintiff disagrees with BANA's rights to exercise these provisions of the contract, nothing precludes BANA from doing so.  Thus, BANA is entitled to summary judgment because plaintiff has not established any issue of material fact to support its claim that BANA breached any terms of the Mortgage agreement, which was not orally modified.

20

BANA also argues that plaintiff has not suffered any recoverable damages as result of the alleged breach and therefore, his claim fails as a matter of law. "Under Michigan law, proof of damages is an essential element of a breach of contract claim." *Kevelighan v. Orlans Associates, P.C.*, 498 Fed. Appx. 469, 476 (6th Cir. 2012) (internal citations omitted). As BANA points out, the only damages plaintiff claims are for emotional distress. Specifically, when asked to itemize his damages and provide supporting documents, in addition to his objections, plaintiff stated that "[m]any persons have knowledge of the pain and suffering Plaintiff family is living through ... ." (Dkt. 147, Ex. O, p. 5 at ¶ 10); (*see also* Dkt. 6, ¶ 21) ("Defendant's bad acts have damage the Plaintiff by putting hte plaintiff's home at risk to foreclosue and inflicting emotional damage to the Plaintiff and his family."). As the Sixth Circuit Court of Appeals recognized in *Kevelighan*, Michigan courts do not award damages for emotional distress in breach of contract cases. *Id*. at 476 (District Court's dismissal of breach of contract claim upheld when plaintiffs were not entitled to damages for embarrassment, humiliation and emotional distress because emotional damages are not available in a breach of contract action); *Kewin v. Massachusetts Mut. Life Ins. Co*., 409 Mich. 401, 419; 295 N.W.2d 50 (1980) (Michigan Supreme Court determined that emotional distress damages were unavailable for a breach of contract even if the breach was in bad faith); *Barker v. Marshall*, 2014 WL

21

3704875, at *5 (Mich. App. 2014) (trial court clearly erred by awarding mental anguish damages for breach of contract).  The undersigned agrees with BANA that plaintiff's alleged damages for emotional distress cannot support his claim. Moreover, as discussed above, plaintiff has offered no evidence contrary to BANA's evidence regarding the receipt, posting, and refund of any payments made to BANA. That is, plaintiff has not established any genuine issue of fact that BANA took any payments from him which are not either credited to his account or that have been refunded to him.  Thus, plaintiff's breach of contract claim also fails for lack of any established damages.

Given the foregoing conclusions, the undersigned need not address BANA's additional argument that plaintiff first breached the contract and therefore, his breach of contract claim is barred.  Notably, no counterclaim for breach of contract is pending in this matter.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendant's motion for summary judgment be **GRANTED** and that plaintiff's complaint be **DISMISSED** with prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 10, 2015                    s/Michael Hluchaniuk
                                         Michael Hluchaniuk
                                         United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 10, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record, and I certify that I have mailed by United States Postal Service the foregoing pleading to the following non-ECF participant(s), at the following address(es): <u>Kevin Scott, 29343 Fieldstone, Farmington Hills, MI 48334</u>.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

24