UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN SCOTT,

                    Plaintiff,                              Case Number 12-12864

v.                                              Honorable David M. Lawson
                                              Magistrate Judge Michael J. Hluchaniuk

BANK OF AMERICA and
BAC HOME LOAN SERVICING,

                    Defendants.

_____/

**ORDER ADOPTING REPORT AND RECOMMENDATION, OVERRULING
PLAINTIFF'S OBJECTIONS, GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,
AND DISMISSING AMENDED COMPLAINT**

       This case is before the Court once again on the objections by plaintiff Kevin Scott to a report

and recommendation filed by Magistrate Judge Michael Hluchaniuk.  In previous orders, the Court

has discussed the state of the pleadings in the plaintiff's *pro se* complaint, since amended, arising

from an attempt by the defendants to foreclose the mortgage on the plaintiff's residence.  After the

Court referred the case to Magistrate Judge Michael J. Hluchaniuk for pretrial management, the

parties have completed discovery, the plaintiff has attempted to amend his complaint on multiple

occasions, the Court has adopted a recommendation to dismiss one defendant and certain legal

theories for recovery, and the remaining defendants have moved for summary judgment.  The claim

that remains is for breach of contract.  Judge Hluchaniuk has filed a report recommending that the

defendants' amended motion for summary judgment be granted and the case be dismissed.  The

plaintiff has filed timely objections.

I.

The plaintiff obtained a loan in 2004 for $285,000 secured by a mortgage on his home in Farmington Hills, Michigan.  The mortgage note called for monthly payments of $2,198.49, which were allocated to principal and interest.  The bank waived the requirement that the plaintiff maintain an escrow account for the payment of property taxes and insurance, but the mortgage allowed the bank to withdraw that waiver if the plaintiff failed to pay those items himself on time.

It appears undisputed that in 2010, the plaintiff neglected to pay city and county taxes, so the bank paid them and sought reimbursement.  That event is the source of the present dispute.  The plaintiff contends that a bank representative named "Michael" contacted him by telephone to tell him that the bank had paid the 2010 property taxes.  The plaintiff says that through a series of telephone calls with "Michael," the plaintiff worked out an arrangement with the bank for a "temporary" escrow account whereby the plaintiff would continue to make his regular monthly mortgage payment, plus periodically make a separate payment for tax reimbursement.  The plaintiff said that he did not want a permanent escrow account established, and Michael agreed.  None of this, however, was ever memorialized in a writing or otherwise.

Instead, the bank sent the plaintiff a letter telling him that it had withdrawn its escrow account waiver, and that his monthly payment would be increased to fund that account.  The plaintiff, however, followed his own payment schedule, although he never again paid his property taxes directly, presumably believing the bank would pay them.  But the amounts the plaintiff paid never were sufficient to cover both his regular payments and all of the taxes that came due, and his escrow account balance continued to be negative.  To complicate things, the bank began returning

payments made by the plaintiff after March 2012, deeming them "partial payments" because they were less than the new amount the bank established to also fund the escrow account.

All of that came to a head when the defendant initiated foreclosure proceedings, contending that the plaintiff was six months behind on his monthly payments. The plaintiff responded by filing the present lawsuit on June 28, 2012, and then paying the bank $20,104.29 the next day, which reinstated the loan and brought it current. The dispute over the payments continues, however. While the lawsuit has been pending, the parties have not agreed on the correct payment. The magistrate judge attempted to resolve the post-2012 payment dispute, but no accord was reached. As recited by the magistrate judge in his latest report, the bank again refused to accept what it deemed "partial payments" until after April 2014.

According to the present record, the plaintiff asserts that he made payments totaling approximately $19,000 to Bank of America that were not credited properly against his obligations under the loan agreement. He also maintains that the bank breached the oral agreement he made with Bank of America employee "Michael," who allegedly told the plaintiff that no escrow account would be attached to the plaintiff's mortgage. The plaintiff contends that the agreement was arranged in order for the plaintiff to repay the property taxes Bank of America advanced. He says that Bank of America has a recording of this oral agreement and contends that it refused to honor it, which denied the plaintiff the benefit and privileges of the contractual relationship.

The plaintiff's complaint, which he amended July 5, 2012, named as defendants Bank of America, BAC Home Loan Servicing, and law firm Trott & Trott, P.C., which was the law firm that initiated the foreclosure proceedings. The single count alleged breach of contract, and also included language which the Court construed as attempting to plead claims for fraud and a violation of

-3-

Michigan's statutory foreclosure by advertisement procedure, as specified under Michigan Compiled Laws § 600.3205a. Trott & Trott filed a motion to dismiss and the bank filed a motion for summary judgment. On September 24, 2013, the Court granted the law firm's motion to dismiss, and granted the bank's motion in part, allowing only the breach of contract claim to proceed.

On May 8, 2013, the bank filed a motion asking the magistrate judge to hold an evidentiary hearing to address certain ongoing aspects of the parties' dispute over the plaintiff's performance of his payment obligations under the loan agreement. On May 13, 2013, after the hearing was held, the magistrate judge entered an order in which he declined to make any ruling as to the status of the parties' respective obligations for any period before July 2012, or to draw any conclusions as to the extent to which the plaintiff was then behind in his payments. However, the magistrate judge did find that, for the period from July to September 2012, the plaintiff owed monthly payments of $3,102.07 per month, and for the following months after September 2012, the plaintiff owed monthly payments of $2,888.98 per month.

On January 15, 2013, the plaintiff filed a motion for leave to file a second amended complaint. On May 16, 2013, the magistrate judge struck that motion because it did not include as an exhibit a full copy of the proposed amended complaint, as required by Eastern District of Michigan Local Rule 15.1. On May 30, 2013, the plaintiff filed a purported second amended complaint. On August 22, 2013, the magistrate judge struck the second amended complaint, because the plaintiff had not filed a proper motion seeking leave to file it.

Under the scheduling order entered by the magistrate judge, discovery closed on July 14, 2014, and dispositive motions were due on August 14, 2014. Bank of America filed its second motion for summary judgment on that date, and, on October 14, 2014, the bank filed an amended

-4-

motion for summary judgment and a notice of withdrawal of its previous motion.  The plaintiff filed a response to the motion, the defendant filed a reply, and the plaintiff filed a sur-reply on December 10, 2014.

On May 4, 2015, the plaintiff filed another motion for leave to file a second amended complaint.  (He had filed another such motion on March 17, 2015, but withdrew it.)  On June 8, 2015, the magistrate judge denied that motion, because he found that the defendant would be seriously prejudiced by allowance of an amendment purporting to raise numerous new claims at such a late stage of the litigation, and the plaintiff had offered no good reason to explain why he had waited until almost two years after the May 30, 2013 deadline that the magistrate judge had set for the plaintiff to seek to amend his pleadings.  The plaintiff objected to that order, but the Court overruled those objections.

On August 10, 2015, the magistrate judge issued a report recommending that the Court grant the defendant's motion for summary judgment and dismiss the complaint.  He reasoned that the plaintiff's breach of contract claim was based on the alleged oral statements made by bank manager "Michael."  However, that claim was barred by Michigan's Statute of Frauds, which requires a writing to enforce "[a] promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation," or to "waive a provision of a loan, extension of credit, or other financial accommodation."  Mich. Comp. Laws § 566,132(2)(b)&(c).  He also suggested that the bank did not breach the contract by refusing to accept partial payments, because the mortgage gives it the express right to do so.  And he concluded that there was no evidence that the bank failed to credit the plaintiff with any of the payments he made.  The magistrate judge also concluded that the plaintiff failed to establish

damages flowing from the alleged contract breach, because the plaintiff claimed only emotional distress damages, which are not recoverable for a breach of contract under Michigan law. He recommended that the defendants' motion be granted and the case dismissed.

On August 24, 2015, the plaintiff timely filed his objections.

## II.

The filing of timely objections to a report and recommendation requires the Court to "make a de novo determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This *de novo* review requires the Court to re-examine all of the relevant evidence previously reviewed by the magistrate judge in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1).

"The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the court "to focus attention on those issues — factual and legal — that are at the heart of the parties' dispute," *Thomas v. Arn*, 474 U.S. 140, 147 (1985). As a result, "'[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

The magistrate judge's report and recommendation addressed the defendants' motion for summary judgment brought under Federal Rule of Civil Procedure 56. Summary judgment is

-6-

appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." 576 F.3d at 558. (citing *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)). "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Id.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If the non-moving party, after sufficient opportunity for discovery, is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). However, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 251-52).

The plaintiff's objections identify twenty-two numbered issues. However, many of the objections are duplicative, and all of them amount to variations of one of the following underlying positions, which the plaintiff repeatedly has advanced throughout the course of this case. The Court

will address the plaintiff's substantive positions, identifying the numbered objections that embody

or reiterate them.

A.

The plaintiff contends that the magistrate judge improperly accepted as established fact the

information presented in the defendants' loan history report and its brief in support of its motion for

summary judgment, without crediting the plaintiff's evidence that he says contradicts the bank's

accounting. (Plaintiff's Objections 1-6, 8-11, 15, 19, 21.)  The Court does not find that contention

to be accurate.  Nonetheless, because the objections trigger a fresh review, the Court will discuss

the record evidence at some length.

1. Loan Account History

As an initial matter, it appears that the magistrate judge relied heavily on the defendants'

recitation of facts in their brief in support of their motion for summary judgment, which he

acknowledged.  Although the facts cited are not un-supported by the record, and in some respects

are undisputed, the statement of facts does not account for all of the specific discrepancies that the

plaintiff claims to have identified in the defendants' accounting.  Moreover, the magistrate judge did

not conduct a thorough accounting of all the amounts allegedly received and disposed of by the bank

from 2010 through 2011.  That is understandable; at the May 2013 evidentiary hearing, the

magistrate judge specifically stated that he declined to make any findings as to the amount of

arrearage or conclusively to resolve any of the parties' disputes over the disposition of funds prior

to the reinstatement of the loan in June 2012.  He left that determination for further development.

Nonetheless, the plaintiff's claims cannot fully and conclusively be resolved without a

detailed examination of the plaintiff's loan history, and the Court will discuss in some detail the

-8-

analysis and reconciliation of all of the amounts that the plaintiff contends he paid to the defendant from January 2010 through March 2012, as disclosed by the record. The Court finds that this reconciliation accounts for all of the alleged discrepancies that the plaintiff claims he has identified in the bank's report of his loan account history. Attached to this opinion is an appendix consisting of Table 1, which is a serial ledger of all the figures relied upon, the sources for which are noted below.

## 2. "Missing" Funds

In his Objection 21, the plaintiff sets forth his own accounting of payments made by him to the bank from January 2010 through March 2012. The plaintiff's accounting includes 28 payments made over the 27-month period in question. The bank admits that it received every one of those payments, on or about the dates on which the plaintiff contends he made each of them, and each payment is accounted for by one or more line items in the bank's report of the plaintiff's loan account history. Def.'s Mot. for Summ. J., Ex. C, Loan Account History Report dated August 7, 2014; *see also* Def.'s Reply [dkt. #151], Ex. V, Table of payment dispositions.. The column marked "Received" in Table 1 records each of the payments that the plaintiff made. The total of those payments comes to $81,081.93. There is an inconsequential discrepancy of 49 cents in the plaintiff's favor between the total derived in Table 1 and the total of the figures stated by the plaintiff in his objections, because in its loan history report the bank credited the plaintiff with a February 25, 2010 payment in the amount of $2,198.49, but the plaintiff's figures show an amount of only $2,198.00 for that payment.

The plaintiff asserts that the bank never has accounted for $19,000.43 from the total payments that he made to the bank from January 2010 through December 2011. He arrived at that

-9-

figure by accumulating what he deemed to be extra funds intended to be used to pay taxes due on the home, which he calculated as the "excess" amount that he sent to the bank during any month when he paid the bank more than the $2,198.49 original note monthly payment for principal and interest. *See* Plf.'s Objs. at 42-44.

The columns in Table 1 reflect the bank's disposition of the payments that the plaintiff made. *First*, the column marked "Returned" indicates the amount of the payment, if any, that was refunded to the plaintiff by the bank. In its reply in support of its motion for summary judgment, the bank provided copies of canceled checks for each of the refund payments noted in Table 1. *E.g.*, Def.'s Reply [dkt. #151], Ex. U, Allison Krivansky decl. Ex. 1, Check #619153 dated Sep. 24, 2011 (Pg ID 2085). Each of those canceled checks appears to bear the signature of the plaintiff on the reverse, and, where discernible, the cancellation marks indicate that the checks were deposited in the plaintiff's account with JP Morgan Chase Bank. *Ibid.* The Table 1 entries for August 26, 2011, November 25, 2011, January 3, 2012, February 27, 2012, and March 26, 2012, each reflect a return in part or in whole of a specific payment that is noted as received on the same line. The amounts refunded from those payments were as follows: from the 8/26/11 payment, $2,308, refunded by Check #619153 dated 9/24/11 (Pg ID 2085); 11/25/11, $2,936.94, Check #1021557 dated 12/29/11 (Pg ID 2092); 1/3/12, $2,960.48, Check #1138669 dated 1/30/12 (Pg ID 2094); 2/27/12, $2,540.42, Check #1353714 dated 3/26/12 (Pg ID 2097); and 3/26/12, $2,308, Check #1441767 dated 4/23/12 (Pg ID 2099). One added entry in Table 1 shows where the bank refunded an excess balance accumulated from previous payments, which was not applied to any part of the plaintiff's loan obligations. On November 1, 2011, the bank refunded $2,937.24, which was the excess balance

accumulated and not applied from three preceding payments of $3.786.32 on 9/26/11, $2,308 on 10/6/11, and $3,102.07 on 10/28/11.  *See* Check #794000 dated 11/1/11 (Pg ID 2088).

The total of the amounts refunded to the plaintiff by the bank over the period in question, as shown at the bottom of the Received column, was $15,991.08.

*Second*, the columns marked "Principal" and "Interest" reflect the amount of each payment that was applied to reducing the principal balance and paying interest due.  The column labeled "Pmt. Mo." indicates the month against which each payment was credited.  For each month until July 2011, each payment was credited as a payment due in the same month it was received.  In later months, the bank credited some payments against months that had not been fully covered by previously received amounts.  As the total at the bottom of those columns shows, the bank applied a total of $52,810.06 to principal and interest against monthly payments due for the 24-month period from January 2010 through December 2011.  Except for an adjustment of $46.30, the total reflects monthly amounts of $2,198.49 for each of the 24 months in question.

*Third*, two added entries in Table 1 reflect events where the bank applied an accumulated excess balance from payments previously received to certain categories.  On February 17, 2011, the bank applied an excess balance of $3,157.08, accumulated from payments of $1,000 on 12/31/10 and $2,308 received on 1/25/11.  The excess balance was applied as follows: $1,492.23 to principal, $706.26 to interest, $109.92 to late fee, and $848.67 against an escrow account negative balance of $7,651.05, which reflected taxes paid by the bank to that date.  After the February 17, 2011 adjustment, an excess balance of $12.46 remained.  On March 30, 2011, the bank applied an excess balance of $155.38, which reflected excess amounts accumulated from payments of $3,300 on 2/28/11 and $3,048 on 3/28/11, added to the previously noted running balance of $12.46.  The

-11-

excess balance was applied as $46.30 to principal and $109.08 to late fee. After the March 30, 2011 adjustment, no excess accumulated balance remained.

*Fourth*, the column labeled "Late Fee" reflects amounts applied against late fees due. The plaintiff's own figures indicate that he owed a total of $2,616 in late fees for 24 late payments made during the period in question. The bank's loan history indicates that it assessed only $1,932.02 in late fees against amounts paid by him during the period.

*Fifth*, the column labeled "Escrow" reflects amounts from each payment, if any, that were applied to reduce the negative balance of the escrow account that the bank maintained for payment of taxes due on the plaintiff's home. As those figures show, the bank credited a total of $10,348.77 over the period against the plaintiff's escrow balance.

*Sixth*, the column labeled "Escr. Bal." shows the outstanding balance in the plaintiff's escrow account based on taxes paid by the bank and credits applied from payments received. The plaintiff admits that, after 2010, he never paid any property taxes on his home to either the City or the County, Def.'s Mot. for Summ. J., Ex. D., Kevin Scott dep. at 76 (Pg ID 1812). All of the amounts shown in the "Taxes Paid" column are corroborated by the public tax records of the City of Farmington Hills, other than the payment of county taxes in the amount of $1,420.29 on October 27, 2010. Def.'s MSJ, Ex. F, City of Farmington Hills Tax Record. (The amount paid for "2010, Summer" is shown in the City's tax record as $5,023.85, but the bank reported a nominally higher total of $5,025.85 paid for that period.) Over the period in question, the bank paid a total of $13,537.10 in city and county taxes that came due on the plaintiff's home.

Taken together, the figures in Table 1 therefore indicate that the bank received a total of $81,081.93 in payments from the plaintiff, refunded $15,991.08 of those amounts paid back to the

plaintiff, and applied the remaining net amount of $65,090.85 as follows: Principal, $35,805.11; Interest, $17,004.95; Late Fees, $1,932.02; and Tax Escrow, $10,348.77.

Over the same period, as noted, the bank allocated $10,348.77 from payments received against a negative running balance in the plaintiff's tax escrow account, but it also paid out $13,537.10 in city and county taxes that came due between October 2010 and December 2011. On March 26, 2012, before the plaintiff reinstated his loan, his tax escrow account had an outstanding negative balance of $3,188.80, which reflected the shortfall between the amounts received and credited to the tax escrow versus the amounts paid out by the bank for taxes due.

It is undisputed that, on July 29, 2012, the plaintiff paid to the defendant $20,104.29 to bring his loan current. The bank later refunded $1,773.79 from that amount to the plaintiff, because it represented estimated costs of foreclosure and inspection that were not incurred, since the plaintiff had reinstated his loan. The bank applied the remainder of $18,330.50 as follows: to Principal and Interest due for each month from January 2012 through June 2012, $13,190.94; and to Tax Escrow, $5,139.56. As noted above, as of March 2012, the plaintiff's tax escrow account had a negative balance of $3,188.80, so after the application of the credit of $5,139.56, the escrow account was left with a positive credit balance of $1,950.76. However, that nominal credit amount subsequently was consumed fully by the more than $12,000 in city and county taxes that came due and which the bank paid through the remainder of 2012 and 2013.

The loan history report produced by the bank does not reflect any payments received from the plaintiff after March 26, 2012. The plaintiff admits that two checks that he sent to the bank on May 4, 2012 and June 5, 2012, each in the amount of $2,308, were returned to him uncashed. Plf.'s Objs. at 44. The plaintiff's figures stated in his objections also suggest that he sent a payment of

-13-

$2,308 on April 27, 2012, but the bank's loan history report does not include any record of that payment. The plaintiff did not identify any evidence in the record showing that any such payment was made by him or received by the bank in April 2012. He also did not indicate in his figures that he included any part of the April 2012 payment in the total of the allegedly "missing" $19,000 that he says the bank received and failed to credit to his account.

The plaintiff has not offered any evidence on which a jury reasonably could conclude that the defendant breached any provision of the loan agreement by failing properly to apply to his obligations under that agreement any funds that the plaintiff paid to the bank from January 2010 through December 2011, or that the bank "extorted" funds from him that were not properly owed, in order to reinstate the loan as of June 2012.

As discussed above, the figures in Table 1 establish that the bank received a total of $81,081.93 in payments from the plaintiff and refunded $15,991.08 of those amounts paid back to the plaintiff. The refund payments are evidenced by canceled checks issued by the defendant, endorsed by the plaintiff, and evidently deposited to his checking account. The plaintiff has not offered any evidence sufficient to prove, or even to suggest, that he did not receive and cash the bank's checks refunding nearly $16,000 of the total amount that he paid toward his loan. The bank's accounting shows that it applied the remaining net amount of $65,090.85 as follows: Principal, $35,805.11; Interest, $17,004.95; Late Fees, 1,932.02; and Tax Escrow, $10,348.77.

The bank applied a total of $52,810.06 to principal and interest against monthly payments due for the twenty-four month period from January 2010 through December 2011. Leaving aside a one-time adjustment to principal of $46.30 made on March 30, 2011, that total reflects monthly amounts of exactly $2,198.49 for each of the 24 months in question — the amount of the regularly

-14-

scheduled payment that was stated in the plaintiff's loan agreement. Over the same period, the bank allocated $10,348.77 from payments received against a negative running balance in the plaintiff's tax escrow account, but it also paid out $13,537.10 in city and county taxes that came due between October 2010 and December 2011. As noted, before the plaintiff reinstated his loan, his tax escrow account had a negative balance because the bank was paying the property taxes and the plaintiff's payments never covered those amounts.

The plaintiff contends that the bank has not accounted for $19,000 in "missing" funds that he paid to the defendant, which never properly were applied to his debt under any term of the loan agreement. As discussed in detail above, the uncontroverted record evidence shows that the bank did fully and properly apply and account for all funds paid by the plaintiff that were not returned to him. Moreover, the allegedly "missing" $19,000 is more than fully covered by the approximately $16,000 that the bank refunded and the more than $10,000 that it applied against the negative running balance in the plaintiff's tax escrow account, to cover taxes that came due and which the plaintiff admits he never directly paid himself to the city or county. The plaintiff has not offered any evidence that he did not receive those refunds, or that the amounts recorded by the bank for payment of the tax obligations were not actually paid out by it.

The plaintiff's first group of objections (Objections 1-6, 8-11, 15, 19, 21), therefore, are overruled.

### B.

The plaintiff contends that the magistrate judge erred in selectively quoting from the record the plaintiff's testimony that he never paid the property taxes due on his home after 2010, without accounting for the plaintiff's explanation that he did not pay those taxes because he instead paid to

the bank amounts sufficient to cover those taxes, above and beyond his normal monthly payments. (Objections 1, 4, 15.)

Those objections have no merit.  The magistrate judge stated in his report that after 2010, the plaintiff never paid property taxes *directly* to the city or county.  The magistrate judge's analysis fully accounts for the fact that the bank paid those taxes and some of the plaintiff's payments were allocated to the escrow account.

## C.

The plaintiff argues the magistrate judge erred in concluding that the plaintiff ever was required to pay more than the monthly payment amount of $2,198.49 stated in the original loan agreement, because the bank's agent "Michael" made an oral promise to the plaintiff that his non-escrow loan account would not be converted to an escrow account, and he would not be required to make additional escrow payments each month to cover taxes due.  (Objections 2, 7, 14, 18.)

The plaintiff's contention, however, is insufficient to sustain his claim for breach of contract. Even if the bank's agent, "Michael," made such an agreement, the promise is unenforceable as a matter of law, because the plaintiff has not offered any evidence suggesting that the bank ever agreed in writing to waive its rights under the tax escrow provision of the loan agreement.  That provision gave the defendants an express right to revoke the escrow waiver under the loan agreement and require the plaintiff to pay amounts required to cover taxes due as part of his regular monthly payment.  The mortgage states:

> If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with

-16-

> Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and
> in such amounts, that are then required under this Section 3.

Def.'s Mot. for Summ. J., Ex. B, Mortgage at 5.  The plaintiff admitted that he never directly paid

to the city or county the taxes that came due on his home after 2010.  It is undisputed that the

defendants sent a letter to the plaintiff on November 15, 2010 informing the plaintiff that the bank

had established an escrow account and would increase his monthly payment to fund that account,

in order to ensure timely payment of future taxes due.  The bank was within its rights to do so, and

the plaintiff has not offered any evidence that it ever made in writing any subsequent representation

that it would do otherwise.

The law is plain and well established in Michigan: any action to enforce an alleged oral

promise made by a bank to waive a provision of a loan agreement is barred by the Statute of Frauds.

Mich. Comp. Laws § 566.132(2)(c) (barring any action to enforce an alleged oral "promise or

commitment to waive a provision of a loan, extension of credit, or other financial accommodation.");

*Crown Tech. Park v. D&N Bank, FSB*, 242 Mich. App. 538, 550, 619 N.W.2d 66, 72  (2000) ("[The

language of Mich. Comp. Laws § 566.132(2)] is unambiguous.  It plainly states that a party is

precluded from bringing a claim — no matter its label — against a financial institution to enforce

the terms of an oral promise to waive a loan provision.").

The plaintiff's third group of objections are overruled.

### D.

The plaintiff contends that the defendants have committed "fraud" and repeatedly lied to the

court throughout the course of the litigation, by representing that the plaintiff had not made any

payments on his loan since the case was filed in July 2012, while "hiding" checks that the plaintiff

had delivered to the bank, and subsequently presenting them for payment all at once in mid-June 2015. (Objections 12, 13, 16.)

Each month from May 2013 through April 2014, the plaintiff delivered to defendants' counsel a check in the amount of $2,888.98, dated between the 23rd and 25th of the month. Shortly after receiving each of those checks, the defendants' attorney returned them, uncashed, with a letter stating that the payment was being refused as insufficient to cover the oldest outstanding past-due payment in the amount of $3,102.07, for the month of July 2012. The defendants' exhibit included copies of some checks that were returned, which were numbered 4106, 4111, 4117, 4184, and 4239. After April 2014, for reasons that are not apparent from the record, counsel for the defendants began to accept and retain the plaintiff's checks, although it appears that they were not cashed until later.

The defendants stated in their brief in support of their amended motion for summary judgment that the plaintiff had failed to make the first three required payments in the payment schedule set by the magistrate judge at a May 2013 evidentiary hearing, and that, until April 2014, the bank had exercised its right to reject partial payments that the plaintiff had attempted to make. The plaintiff contends that the following representation made by the defendants in their brief was false and fraudulent, and represents the defendants' attempt to "hide" payments made by him from the Court, and to conceal that they actually retained and later cashed many of his checks. The defendants asserted:

> Plaintiff is currently in default on his Loan. Until May 2013, Plaintiff had not made any Mortgage payments since the lawsuit was filed in July 2012. Despite this Court's ruling at the evidentiary hearing in May 2013 that Plaintiff's first three monthly payments were to be in the amount of $3,102.07, Plaintiff has attempted to make payments in the incorrect amount of $2,888.98 since May 2013. Because each attempted payment was in the incorrect amount, each attempted payment was returned until after the April 2014 payment. In order to reinstate his Mortgage, as

-18-

of July 2014, Plaintiff owed a total of $71,564.77 to Defendant along with late charges in the amount of $491.33 for a total of $72,056.10.

Def.'s Am. Mot. for Summ. J. at 12-13 (citations omitted).

On June 19, 2015, when the plaintiff filed his objections to the magistrate judge's order denying his motion for leave to file a second amended complaint, he attached as an exhibit copies of twelve checks made payable to Bank of America that were presented for payment against his account on June 11 and June 15, 2015. The checks were dated between June 24, 2014 and May 21, 2015, and all were made in the amount of $2,888.98. The copies were of the following check numbers: 4242 (6/24/14), 4083 (7/25/14), 4246 (8/25/14), 4085 (9/25/14), 4193 (10/24/14), 4195 (11/25/14), 4252 (12/24/14), 4196 (1/23/15), 4255 (2/25/15), 4198 (3/25/15), 4257 (4/24/15), and 4088 (5/21/15). The plaintiff also included in his exhibit a letter from his bank indicating that those listed check numbers, along with one other check, were presented to the bank for payment in mid-June 2015. The plaintiff did not include copies of the remaining check, which was numbered 4619.

The plaintiff has not offered any evidence to substantiate his claims that the defendant "lied" or committed "fraud on the court" or in any other way misrepresented or concealed payments made by him after the lawsuit was filed in July 2012. The magistrate judge made the following determination in his order after the May 2013 evidentiary hearing:

> Given the propriety of setting up the escrow account, the correct amount of the payments due under the terms of the mortgage, for the relevant period, are $3,102.07 for the July to September, 2012 period and $2,888.98 for subsequent periods. This determination is without prejudice to additional findings that might be made by a jury at a trial in this matter and is based solely on the limited record of evidence submitted at the hearing. As indicated above, it is not appropriate to make additional findings about arrearage amounts or reinstatement amounts because such determinations implicate issues that [are] at the heart of plaintiff's breach of contract claim which is a matter for a jury.

-19-

Order [dkt. #82] at 6.  The plaintiff has not offered any evidence that he ever tendered to the defendant payments in the proper amount of $3,102.07 to cover the oldest outstanding past-due payments on his loan for July, August, and September 2012.  Instead, he repeatedly attempted to make insufficient payments of only $2,888.98, which the defendant repeatedly rejected.  The bank was within its rights to do so under the loan agreement.  Mortgage at 4 ("Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current.").

The bank never made any representation to the Court that was inconsistent with the undisputed facts or was in any way misleading.  It correctly stated that the plaintiff had attempted to make insufficient payments, and the bank had rejected them.  Moreover, the plaintiff has not offered any evidence to show that the bank ever misrepresented that it had returned any of his checks, but in fact retained and later cashed them.  None of the checks that the defendant stated it had returned were identified by number in the list of checks presented for payment in mid-June 2015.  None of the checks that the plaintiff submitted as exhibits to his objections to the motion to amend were dated earlier than June 2014, and none of them were among the checks that the bank stated it had returned as comprising insufficient partial payments.  The bank asserts that it returned the plaintiff's payments until after April 2014, and the plaintiff has not offered any proof that it did otherwise.

The plaintiff's fourth group of objections are overruled.

## E.

In his Objection 17, the plaintiff summarily recites the elements of a claim for breach of contract under Michigan law and asserts, without elaboration, that he "has proven claims for breach

of contract." That statement is insufficient to warrant review, because it does not identify any specific defect in the magistrate judge's report and recommendation, and it does not set forth any factual basis or legal authority to support a conclusion that the magistrate judge erred. "Overly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general," *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380), and "the failure to file specific objections to a magistrate's report constitutes a waiver of those objections," *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

Moreover, to state a claim for breach of contract under Michigan law, a plaintiff first must establish the elements of a valid contract. *Pawlak v. Redox Corp.*, 182 Mich. App. 758, 765, 453, N.W.2d 304, 307 (1990). The elements of a valid contract in Michigan are (1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation. *Thomas v. Leja*, 187 Mich. App. 418, 468 N.W.2d 58, 60 (1990). Once a valid contract has been established, the plaintiff then must prove (1) the terms of the contract, (2) breach of those terms by the defendant, and (3) injury to the plaintiff resulting from the breach. *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003). Although the plaintiff established the existence of a valid contract, the magistrate judge correctly determined that the plaintiff failed to offer sufficient evidence of a breach. As the detailed discussion of the record above demonstrates, the magistrate judge was correct.

-21-

F.

In his Objection 20, the plaintiff asserts, without elaboration, and without citing any legal authority or any factual basis from the record, that he "has proven damages against Defendant," and that the magistrate judge erred in concluding that he had presented no evidence of damages resulting from the defendants' alleged breach. As with the previous objection, the lack of detail and failure to develop any argument in support obviates the need for review. *Spencer*, 449 F.3d at 725; *Cowherd*, 380 F.3d at 912. Moreover, the record indicates that there are no economic damages, and the plaintiff received credit for all the payments he made according to the mortgage contract. The only other element of damages identified by the plaintiff was emotional distress, for which recovery is not available under Michigan law. *See Kewin v. Mass. Mut. Life Ins. Co.*, 409 Mich. 401, 420, 295 N.W.2d 50, 55 (1980).

G.

In his Objection 22, the plaintiff argues that the magistrate judge erred in denying his motion for leave to file a second amended complaint and recommending that the case be decided on summary judgment, because, during the May 2013 evidentiary hearing, the plaintiff was not allowed to present or argue his case in chief regarding the discrepancies between his accounting and the bank's, and without a trial he now will never be allowed to present his case.

The Court previously discussed these same objections in the order entered earlier this week overruling the plaintiff's objection to the magistrate judge's order denying his motion for leave to file a second amended complaint. They need not be discussed further.

III.

The magistrate judge correctly concluded that the defendants' motion for summary judgment should be granted. The plaintiff has not offered evidence to establish a question of material fact that requires his breach of contract claim to be submitted to a jury. The defendants are entitled to a judgment as a matter of law on that claim.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt. #166] is **ADOPTED**, and the plaintiff's objections [dkt. #167] are **OVERRULED**.

It is further **ORDERED** that the defendants' amended motion for summary judgment [dkt. #147] is **GRANTED**.

It is further **ORDERED** that the amended complaint is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   September 4, 2015

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 4, 2015.

s/Susan Pinkowski
SUSAN PINKOWSKI

---

-23-

**A P P E N D I X**

| | PMT MO | RECEIVED | RETURNED | PRINCIPAL | INTEREST | LATE FEE | ESCROW | APPLIED | EXCESS BAL. | PRINC. BAL. | ESCR. BAL. | TAXES PAID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/25/10 | 1/10 | 2,307.00 | 0.00 | 1,424.91 | 773.58 | 108.51 | 0.00 | 2,307.00 | 0.00 | 199,287.48 | (0.47) | 0.00 |
| 2/25/10 | 2/10 | 2,198.49 | 0.00 | 1,430.40 | 768.09 | 0.00 | 0.00 | 2,198.49 | 0.00 | 197,857.08 | (0.47) | 0.00 |
| 4/23/10 | 3/10 | 2,308.00 | 0.00 | 1,435.92 | 762.57 | 109.51 | 0.00 | 2,308.00 | 0.00 | 196,421.16 | (0.47) | 0.00 |
| 5/3/10 | 4/10 | 2,400.00 | 0.00 | 1,441.45 | 757.04 | 201.51 | 0.00 | 2,400.00 | 0.00 | 194,979.71 | (0.47) | 0.00 |
| 5/26/10 | 5/10 | 2,308.00 | 0.00 | 1,447.01 | 751.48 | 109.51 | 0.00 | 2,308.00 | 0.00 | 193,532.70 | (0.47) | 0.00 |
| 6/25/10 | 6/10 | 2,308.00 | 0.00 | 1,452.58 | 745.91 | 109.51 | 0.00 | 2,308.00 | 0.00 | 192,080.12 | (0.47) | 0.00 |
| 7/23/10 | 7/10 | 2,308.00 | 0.00 | 1,458.18 | 740.31 | 109.51 | 0.00 | 2,308.00 | 0.00 | 190,621.94 | (0.47) | 0.00 |
| 8/25/10 | 8/10 | 2,308.00 | 0.00 | 1,463.80 | 734.69 | 109.51 | 0.00 | 2,308.00 | 0.00 | 189,158.14 | (0.47) | 0.00 |
| 9/24/10 | 9/10 | 2,308.00 | 0.00 | 1,469.44 | 729.05 | 109.51 | 0.00 | 2,308.00 | 0.00 | 187,688.70 | (0.47) | 0.00 |
| 10/27/10 | 10/10 | 2,308.00 | 0.00 | 1,475.11 | 723.38 | 109.51 | 0.00 | 2,308.00 | 0.00 | 186,213.59 | (1,420.76) | (1,420.29) |
| 11/26/10 | 11/10 | 2,308.00 | 0.00 | 1,480.79 | 717.70 | 109.51 | 0.00 | 2,308.00 | 0.00 | 184,732.80 | (6,446.61) | (5,025.85) |
| 12/27/10 | 12/10 | 2,308.00 | 0.00 | 1,486.50 | 711.99 | 109.51 | 0.00 | 2,308.00 | 0.00 | 183,246.30 | (7,651.05) | (1,204.44) |
| 12/31/10 | 12/10 | 1,000.00 | 0.00 | 0.00 | 0.00 | 138.46 | 0.00 | 138.46 | 861.54 | 183,246.30 | (7,651.05) | 0.00 |
| 1/25/11 | 12/10 | 2,308.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,169.54 | 183,246.30 | (7,651.05) | 0.00 |
| 2/17/11 | 1/11 | 0.00 | 0.00 | 1,492.23 | 706.26 | 109.92 | 848.67 | 3,157.08 | 12.46 | 181,754.07 | (6,802.38) | 0.00 |
| 2/28/11 | 2/11 | 3,300.00 | 0.00 | 1,497.98 | 700.51 | 109.92 | 848.67 | 3,157.08 | 155.38 | 180,256.09 | (5,953.71) | 0.00 |
| 3/28/11 | 3/11 | 3,048.00 | 0.00 | 1,503.75 | 694.74 | 0.84 | 848.67 | 3,048.00 | 155.38 | 178,752.34 | (5,105.04) | 0.00 |
| 3/30/11 | 3/11 | 0.00 | 0.00 | 46.30 | 0.00 | 109.08 | 0.00 | 155.38 | 0.00 | 178,706.04 | (5,105.04) | 0.00 |
| 4/29/11 | 4/11 | 3,048.00 | 0.00 | 1,509.56 | 688.93 | 0.84 | 848.67 | 3,048.00 | 0.00 | 177,196.48 | (4,256.37) | 0.00 |
| 5/31/11 | 5/11 | 3,048.00 | 0.00 | 1,515.55 | 682.94 | 0.84 | 848.67 | 3,048.00 | 0.00 | 175,680.93 | (3,407.70) | 0.00 |
| 6/24/11 | 6/11 | 3,048.00 | 0.00 | 1,521.39 | 677.10 | 0.84 | 848.67 | 3,048.00 | 0.00 | 174,159.54 | (2,559.03) | 0.00 |
| 7/24/11 | 7/11 | 3,048.00 | 0.00 | 1,527.25 | 671.24 | 0.84 | 848.67 | 3,048.00 | 0.00 | 172,632.29 | (1,710.36) | 0.00 |
| 8/26/11 | 7/11 | 2,308.00 | (2,308.00) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 172,632.29 | (6,405.56) | (4,695.20) |
| 9/26/11 | 8/11 | 3,786.32 | 0.00 | 1,533.14 | 665.35 | 109.92 | 848.67 | 3,157.08 | 629.24 | 171,099.15 | (5,556.89) | 0.00 |
| 10/6/11 | 8/11 | 2,308.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,937.24 | 171,099.15 | (5,556.89) | 0.00 |
| 10/28/11 | 9/11 | 3,102.07 | 0.00 | 1,539.05 | 659.44 | 54.91 | 848.67 | 3,102.07 | 2,937.24 | 169,560.10 | (4,708.22) | 0.00 |
| 11/1/11 | 9/11 | 0.00 | (2,937.24) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 169,560.10 | (4,708.22) | 0.00 |
| 11/25/11 | 10/11 | 6,039.01 | (2,936.94) | 1,544.98 | 653.51 | 0.00 | 903.58 | 3,102.07 | 0.00 | 168,015.12 | (3,804.64) | 0.00 |
| 12/12/11 | 10/11 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 168,015.12 | (4,995.96) | (1,191.32) |
| 1/3/12 | 10/11 | 2,960.48 | (2,960.48) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 168,015.12 | (4,995.96) | 0.00 |
| 2/27/12 | 11/11 - 12/11 | 8,744.56 | (2,540.42) | 3,107.84 | 1,289.14 | 0.00 | 1,807.16 | 6,204.14 | 0.00 | 164,907.28 | (3,188.80) | 0.00 |
| 3/26/12 | 12/11 | 2,308.00 | (2,308.00) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 164,907.28 | (3,188.80) | 0.00 |
| TOTAL | 1/10 - 12/11 | 81,081.93 | (15,991.08) | 35,805.11 | 17,004.95 | 1,932.02 | 10,348.77 | 65,090.85 | | | | (13,537.10) |